QUESTIONS: 1. Is the county legally liable for payment of a bill covering illness during time after release when a prisoner is treated for a specific disease or ailment while in the county prison system and his ailment continues after release, on the premise that the illness was contracted while the prisoner was in county hands? 2. At what point is county responsibility for care generally terminated? 3. Can he be personally billed for hospital costs if he has personal hospital insurance if hospitalization of the prisoner is required while he is a county prisoner? 4. Should his medical care be billed to him as an individual for the entire time of his stay in the system, assuming an illness was contracted prior to entry into the county system? 5. Is the county required to pay for a prisoner's medical care or should the municipality be responsible for such a bill when he is arrested by a municipal law enforcement agency for the commission of a felony, during which time of arrest he has been injured?
SUMMARY: Under s. 951.23, F.S., and F.A.C. Rule 10B-8.08 of the Department of Health and Rehabilitative Services, a sheriff has the duty to provide medical care to any prisoner in his custody for violation of a state criminal law regardless of whether the prisoner's illness or injury existed before he was taken into the sheriff's custody and regardless of whether the prisoner was initially arrested by a municipal law enforcement officer before being taking into the sheriff's custody. Neither s. 951.23 nor Rule 10B-8.08 makes any distinction between indigent and nonindigent prisoners as to a sheriff's duty to provide medical care; thus, sufficient funds should be budgeted to cover the cost of providing such care to any prisoner in need thereof. A sheriff's duty to provide medical care generally ends when the prisoner is released from custody. AS TO QUESTIONS 1 and 2: Section 951.03, F.S., requires boards of county commissioners, when working county prisoners on the public works of the counties, to "provide or cause to be provided, substantial food, clothes, shoes, medical attention, etc., for said prisoners as are required for state prisoners in the state." And F.A.C. Rule 10B-8.08, adopted by the Department of Health and Rehabilitative Services under the authority of s. 951.23, id., requires the officer in charge of a county or municipal detention facility to call a physician immediately if there are indications of serious injury, wound, or illness on the part of an inmate. The statute — which has been on our statute books for more than 50 years — has been uniformly interpreted by my predecessors in office as making the county liable for hospital, medical, and surgical expenses for the care and treatment of sick or injured prisoners incurred at the request of its law enforcement officers. Thus, in a 1921 opinion reported at p. 352 of the 1921- 1922 Biennial Report of the Attorney General, it was said that, while there were no court decisions on the question, it was the duty of the sheriff, as custodian, to procure the necessary attention for the inmates, and that "the county would be liable for the compensation due the physician for services so had and obtained." And, in AGO 059-18, it was ruled that "the medical and surgical expenses necessary for the keeping of a prisoner, although incurred by the sheriff, may be paid by the county." Accord: Attorney General Opinion 046-424, Biennial Report of the Attorney General, 1945-1946, p. 234, ruling that the county was liable for the medical expense incurred for a prisoner who was injured by a deputy sheriff in arresting him. Cf. AGO's 059-148 and 074-72, ruling that a nonindigent municipal prisoner arrested for violation of a municipal ordinance should bear the cost of medical care if the need for such care does not flow from any negligent act on the part of the city which would subject the city to a tort action. It should be emphasized here that AGO 074-72 was concerned with the ultimate responsibility for payment of medical care furnished by a municipality. Insofar as AGO 074-72 suggests that there is some distinction between indigent and nonindigent prisoners as to the duty imposed upon the officer in charge of a detention facility to provide medical care to inmates, it is hereby receded from. The opinions are also unanimous in ruling that the duty of the sheriff and the county with respect to medical care for county prisoners is specifically limited to "prisoners" or "inmates" of a detention facility and that this duty ends upon the release of the prisoner from custody. As noted in AGO 072-346, incarceration is the basis of the responsibility, so that . . . the termination of the sentence, or the release of the prisoner on his own recognizance while he was in a hospital, would seem to end the Sheriff's responsibility in the matter. AS TO QUESTION 3: No decision of the Florida courts or those of any other jurisdiction on this question has been found. As noted in AGO 072- 346, the sheriff has the duty under Rule 10B-8.08, supra, to provide appropriate medical care for ailing prisoners without regard to whether the prisoner is indigent or nonindigent and should budget funds sufficient to cover the expected cost of such care. (See also s. 30.49(4), F.S., providing for review and approval of the sheriff's budget by the board of county commissioners.) It would appear, therefore, that the sheriff could not compel the hospital to look only to the prisoner's insurance policy or the prisoner for payment. AS TO QUESTION 4: Subsection (1) of Rule 10B-8.08, supra, provides: (1) The officer-in-charge or his designated representative shall assure that each inmate is observed daily, and a physician shall be immediately called if there are indications of serious injury, wound, or illness. The instructions of the physician shall be strictly carried out. Ill inmates shall be furnished such food as is prescribed by the attending physician. The above language makes no reference to the time an illness is contracted or an injury sustained. The rationale of the rule seems to be that an inmate must depend entirely upon the person in charge of the detention facility for his well-being while incarcerated; and, this being the case, the only relevant consideration is the existence of an illness or injury, not its cause or the time it first arises. AS TO QUESTION 5: In AGO 072-346, it was my opinion that: Insofar as the responsibility for the cost of providing medical and surgical services to prisoners is concerned, the fact that the prisoner was arrested by a state highway patrolman or by a municipal officer for violation of a state criminal statute and turned over to the sheriff for detention would seem to be irrelevant . . . . When the sheriff accepts custody of the person so arrested, he becomes a prisoner of the county . . . . And the sheriff then becomes responsible for his safekeeping to the same extent as any other prisoner. Your fifth question is answered accordingly.